## MAULL vs. VAUGHN.

[ACTION ON PROMISSORY NOTE.]

1. *Promissory note; what not sufficient consideration for.*—A man dies insolvent, leaving a widow and an infant child, and one horse, which is used by the widow as a plow and saddle horse, without letters of administration ; and an agent of a judgment-creditor of the husband obtains from the widow her promissory note, with surety, in settlement of said judgment, telling her that she was liable to pay the judg-

ment because she had so used the horse; and thereupon, without the widow's request he receipts the judgment on the docket,—*Held*, that such promissory note is without consideration, and no action can be maintained thereon against the widow, and that being void as to the widow, the principal, it is also void as to her surety.

2. *Same; what sufficient consideration for.*—If such a settlement be made and note given, and the judgment receipted at the instance and request of the widow, then the note would have been supported by a sufficient consideration.

3. *Same; what sufficient consideration to support promise.*—In respect to the trouble, loss or obligation taken upon himself, by a promisee, *at the instance and request* of the promisor, it is immaterial that the detriment or charge thus assumed is, in fact, of the most trifling description; provided it be not utterly worthless, in fact and in law, it will be a sufficient consideration to support a promise.

4. *Contract; what sufficient to support.*—If a contract be deliberately made without fraud, and with a full knowledge of all the circumstances, the least consideration will be sufficient to support it; but the assumption of a supposed liability, which, in truth, has no foundation, is not a sufficient consideration for a valid promise—a promise upon which an action can be maintained.

APPEAL from the Circuit Court of Lowndes.
Tried before Hon. J. Q. SMITH.

The facts are fully set out in the opinion.

WATTS & TROY, for appellant.—1. There was no consideration for the promise made by Mrs. Alford. The debt agreed to be paid was that of her deceased husband, for which she was in no respect bound. She received no property of the estate of the husband, which was liable to pay his debts. The horse was a work-horse, exempt from payment of debts. Her promise was voluntary, without any consideration to support it.—See *Jackson v. Jackson*, 7 Ala. 792; *Williams v. Sims*, 22 Ala. 512; *Black, Ex'r, v. Martin*, 21 Ala. 721; *Rutledge's Adm'r v. Townsend, Crane & Co.*, 38 Ala. 712, and authorities there cited; *Same Case*, p. 716.

2. The promise was void under the statute of frauds. Our present statute of frauds requires "*the* consideration" to be stated, when the promise is to account or be responsible for the debt, miscarriage or default of another.—See *Rigby v. Norwood*, 34 Ala. 129.

There must be a valid consideration, as well as a *written*

promise, to be binding on a party promising to pay the debt of another.—See *Rigby v. Norwood, supra ; Rutledge v. Townsend, Crane & Co., supra.*

3. This was the *debt* of Cook Alford, the late husband of Mrs. M. A. Alford. She received no *benefit* from the payee of the note, and he incurred no injury, so that there could be no valid consideration for the promise, so far as she was concerned.

4. If there was no consideration for Mrs. Alford's promise, *a fortiori* there was no consideration for the promise of Maull, her surety.

The part-payment made no difference. No estoppel could grow out of the payment; not one of the elements of an estoppel is shown.

FALKNER & MOLTON, *contra.*—It is expressly decided in numerous cases that a benefit to the promisor or detriment to the promisee, however small, is a sufficient consideration to support a promise. And the law does not require that the consideration shall be adequate. It is enough, if it be valuable.—See *Rutledge's Adm'r v. Townsend, Crane & Co.,* 38 Ala. 706, (but especially 718, at bottom) ; *Holt v. Robinson,* 21 Ala. 107 ; *Steele v. Brown,* 18 Ala. 700 ; *Salmons v. Roundtree,* 24 Ala. 458 ; *Erwin & Williams v. Erwin,* 25 Ala. 236 ; *Hatton's Adm'r v. Jordan,* 29 Ala. 266 ; *Whiteside v. Jennings,* 19 Ala. 784 ; 2 Amer. Lead. Cases, 137, 138, and cases cited.

It is contended, however, that G. C. Alford's estate was insolvent, and that, therefore, the judgment was of no value. We insist that this makes no difference as to the principle above settled by authorities; the judgment was orignally founded on a sufficient consideration, and was a valid judgment and a valid claim against his estate, and gave the plaintiff in it *a right,* and among other rights to have administration granted on the estate, and even to take the administration himself, and to bring suit for any property or claim of said estate, &c. ; all of which *rights* were surrendered by the giving of the note.

PECK, C. J.—Upon first looking into this record, my

impressions were in favor of an affirmance of the judg-
ment, but on a more careful examination of the bill of excep-
tions, in which all the evidence and the charge of the court
are set out, I am satisfied my first impressions were wrong.

The action was commenced against Mrs. M. A. Alford,
the widow of G. C. Alford, deceased, and appellant, E. G.
Maull.

The summons was returned not found, as to Mrs. Alford,
and, as to her, the suit was dismissed, and thereupon was
prosecuted against said E. G. Maull alone.

The action is founded on a promissory note, made by
Mrs. Alford, as principal, and appellant, her brother, as
surety, dated the 13th day of October, 1865, for two hun-
dred and eight dollars, and payable to one James Lam-
bert, on the first day of January, 1866.

The appellee is plaintiff, and the complaint states that
the said note is his property. The defendant plead—1st,
non-assumpsit; 2d, failure of consideration; and, 3d, that
there was no consideration for the note sued on.

On the trial, the evidence consisted of the said note and
the oral examination of the defendant, and the depositions
of the plaintiff and his brother, F. A. Vaughn, and dis-
closes, substantially, the following case :

The defendant, on his examination, stated that in 1859
or 1860, the deceased bought a horse of said Lambert, and
gave his promissory note for the same ; that suit was
brought on said note by said Lambert, in Tallapoosa
county, and judgment recovered for more than two hundred
dollars and costs, in the year 1862 ; that afterwards, in the
same year, deceased departed this life, leaving his said
widow and one infant child, but left no property, that he
knew of, but one horse, which was used by the widow as a
plow and saddle horse, until some time in 1863, when he
was taken from her by the Confederate military authori-
ties ; that on the day the said note was given, plaintiff came
to see Mrs. Alford, who was then living near defendant, and
informed her that he was the attorney of said Lambert,
the plaintiff in said judgment, and urged her to pay the
same, and told her she was liable for the payment thereof,

10

by reason of having used said horse, so left by her hus-band, after his death; that Mrs. Alford was unwilling to pay said judgment; that he, defendant, was ignorant of the law, and thought she was liable to pay it, and persuaded her to settle it; that plaintiff then proposed to take the note of Mrs. Alford and himself in settlement of said judg-ment, and thereupon said note was given; that the settle-ment of said judgment was the only consideration for said note; that defendant had paid to plaintiff's brother thirty dollars on said note, and promised to pay the remainder if he would leave the note with Judge Falkner, but he failed to do so; and said Falkner, as plaintiff's attorney, brought this suit; that no administration had been granted on the estate of said deceased.

The plaintiff, in his deposition, states that said note was given for and in consideration of said judgment, interest and costs; that on giving said note said judgment was satisfied, he thought, by giving a receipt to said parties; and that he had, afterwards, satisfied said judgment by receipting the same on the docket.

He admits the payment of the thirty dollars on said note, to his brother as his agent; that on the day the note was given, defendant promised to pay the same punctually, and certainly during the winter of 1865; and that he was the owner and holder of said note.

Plaintiff's brother, F. A. Vaughn, says, in his deposition, the note was given for a horse, or on a judgment on a note given for a horse; that about the 10th of January, 1866, defendant paid to him, as agent for plaintiff, thirty dollars on said note; that at the time of said payment, he said the reason he did not pay the whole of it, was in conse-quence of his failure to sell cotton, and his disappointment in getting money, and if he would leave the note with Judge Falkner, of Montgomery, he would sell some cotton soon and pay it.

On this evidence, the court gave substantially the follow-ing charge to the jury: If you find, from the evidence, that one Lambert sold a horse to George C. Alford, in his life time, and the promissory note given for the purchase of the horse was reduced to judgment, in the circuit court of

Tallapoosa county; and you find that although George C. Alford left no estate, except a horse, and that no money could be made on a judgment against his estate; and if you find, further, that when the judgment debt was presented for payment to the widow of George C. Alford, by the agent of the plaintiff in said judgment, and that there was no legal liability on the part of the widow of George C. Alford to pay the judgment debt, yet, if you find that the widow of George C. Alford and Edward G. Maull, her brother and co-defendant in this action, to prevent and stop further prosecution of the judgment by plaintiff, and to avoid taking out administration, and, in consideration of the judgment and costs against George C. Alford, deceased, which is cancelled, made and executed their certain promissory note, in writing, being the same sued on in this action, and delivered the same to plaintiff, you may find for the plaintiff, and assess his damages at the amount of the note and interest, less the credit and interest on the credit.

To this charge the defendant excepted, and thereupon asked two charges in writing, which were refused by the court, and he excepted.

The case comes here on the defendant's appeal, and he assigns for errors, the charge given and the refusal of the court to give the charges asked.

The view taken of the charge given by the court renders it unnecessary to consider the charges refused, and, therefore, no further notice is taken of them in this opinion.

To entertain the charge given, it must be held—1st, that the further prosecution of the said judgment by said Lambert, against the estate of said George C. Alford, deceased, would either have injured Mrs. Alford, the widow, or benefitted the said Lambert; or, 2d, that the receipting of said judgment, as stated, under the circumstances, was a detriment to said Lambert, or a benefit to Mrs. Alford, otherwise, the note described in the complaint is without consideration, and so no action can be maintained on it.

1st. The further prosecution of the said judgment would, necessarily, have required an administration on the estate of said George C. Alford, deceased.

How could either have injured Mrs. Alford, the widow ? As far as the evidence shows, she had nothing in her possession belonging to the estate that was subject to the payment of her deceased husband's debts.

The horse left by him at his death was clearly exempted from the payment of his debts.—Rev. Code, § 2061.

But, even if this horse was not so exempted, it was lawful for the widow to use him until an administration was granted, without in any wise subjecting herself to any liability for the debts of her husband, as executrix in her own wrong, or otherwise.   We are, therefore, unable to see how she could be injured or suffer any loss by the further prosecution of said judgment, or the granting of administration on said estate.

Would the said Lambert have been benefitted by the further prosecution of said judgment ? If the deceased left no estate or property but the said horse, and no money could be made on the said judgment, it is difficult to perceive how he would have been benefitted by the prosecution of a worthless judgment.

2d. Did he suffer any detriment by the receipting of the judgment, as stated in the plaintiff's deposition ? It is insisted that, thereby, a valid judgment was discharged and satisfied, and that that was a detriment to him, although the estate was insolvent, and nothing could be made on the judgment.

If this had been done at the instance and request of Mrs. Alford, we might be disposed to hold it a sufficient consideration to support the note.—Chitty on Contracts, p. 32, (7th American, from the 3d London edition.)   This author says, in respect to the trouble, loss, or obligation which a promisee takes upon himself, *at the promisor's request*, it is immaterial that the detriment or charge thus assumed is, in fact, of the most trifling description, provided it be not utterly worthless in fact and in law.

That, however, is not this case ; but so far from it, that Mrs. Alford not only did not request the plaintiff, as the agent of said Lambert, to discharge said judgment, but did not admit her liability to pay it, and was unwilling to give this note, and was only induced to give it after being

thereto urged by plaintiff, and assured by him that she had become liable to pay it, because she had used said horse, as stated, after the death of her husband.

Whether the defendant was honest in his representations to Mrs. Alford, can not, perhaps, be known; but it is certain, if honest, he was grossly mistaken, and it is equally as certain that common justice requires that neither he nor his principal should be permitted to derive any benefit by his false representations, even if ignorantly made, at the expense and loss of the party deceived by them.

We think this by no means an immaterial fact, to be taken into the account in determining the question, whether the said note is supported by any sufficient legal consideration.

If the payee of this note really sustained any injury or detriment by the receipting of said judgment, it should not be forgotten that it was a matter of his own seeking, through his agent, and that he was not moved to it by the request or at the instance of Mrs. Alford or the defendant.

She did not, when first approached on the subject, recognize any liability on her part to pay her husband's debts, and it is manifest, to say the least of it, that the note was given in utter ignorance of the law on the subject.

If a contract be deliberately made, without fraud, and with a full knowledge of all the circumstances, the least consideration will be sufficient to support it.—*Train v. Gold*, 5 Pick. 384. But the assumption of a supposed liability, which has no foundation in law or fact, is not a sufficient consideration for a promise, upon which an action can be maintained.—*Cabot v. Haskins*, 3 Pick. 83. That is this case. The supposed liability of Mrs. Alford to pay the debts of her deceased husband, had no foundation either in law or fact. She was under no legal, or even moral obligation, to do so. Therefore, the note given for that purpose, under the circumstances, being urged to it by the false representations of the plaintiff, is without any legal consideration, and no action can be maintained on it against her; and, being void as to Mrs. Alford, the principal, it can not be valid as to the defendant, E. G. Maull,

who is merely her surety. We hold, therefore, that the court below misapprehended the law, in the charge given to the jury; and for this error, the judgment is reversed and the cause remanded for another trial.