407 A.2d 448

**Dr. Harris M. NEWMAN, Appellant,**

v.

**Dr. Lester SABLOSKY.**

Superior Court of Pennsylvania.

Argued June 15, 1978.

Decided July 20, 1979.

Petition for Allowance of Appeal Denied Nov. 1, 1979.

86

Norman Mittman, Lansdale, for appellant.

Joseph A. Malloy, Jr., Philadelphia, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

The instant appeal is from an order of the court below denying appellant's request for a preliminary injunction to restrain appellee from violating a covenant not to compete. Because the covenant was not supported by consideration, we affirm the order of the court below.

The facts pertinent to this appeal are as follows. From 1952 to 1976, appellee maintained a general practice of medicine in Norristown, Montgomery County. From 1965 to 1976, he maintained the practice in an office owned by his son at 1000 DeKalb Street in that borough. In 1976, appellee expressed a desire to sell his practice and move to Florida. On August 25, 1976, the parties signed an agreement of sale drafted by appellee's attorney. The agreement provided that appellant would purchase appellee's practice along with all equipment, medical supplies, and furniture. As originally drafted, the agreement included the sale of the "good will" of the practice, but at appellant's request, these words were deleted. Finally, the agreement provided that it was contingent upon appellant purchasing the building at 1000 DeKalb Street from appellee's son.

Shortly thereafter, appellant secured the necessary financing to purchase the property at 1000 DeKalb Street. On September 21, 1976, closing on the property was scheduled. Appellant was represented at closing by counsel, who objected that the agreement of sale did not contain a covenant not to compete. Appellee reaffirmed his intention to retire to Florida, and stated that he would sign any covenant that appellant desired. Closing on the property was completed, and the parties returned to the office of appellee's attorney. An addendum to the August 25th agreement was signed which provided that appellee would not engage in the practice of medicine within fifteen (15) miles of Norristown for a period of five (5) years.

In March or April of 1977, appellee returned to the Norristown area and secured employment at the Norristown State Hospital. On October 17, 1977, he opened an office for

the general practice of medicine in King of Prussia, approximately four (4) miles from his old office in Norristown. Appellant immediately filed a complaint in equity requesting, *inter alia*, a preliminary injunction restraining appellee from maintaining an office within fifteen (15) miles of Norristown. On November 1, and December 15, 1977, hearings were held on appellant's complaint. The court below determined that because the covenant not to compete was not supported by consideration, a preliminary injunction could not be issued. Reviewing the record, we must agree with the court below.

"The law in this Commonwealth for more than a century has been that in order to be enforceable covenants in restraint of trade must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of good will or other subject property or to a contract of employment; (2) *the covenant must be supported by adequate consideration* ; and (3) the application of the covenant must be reasonably limited in both time and territory." *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 331, 314 A.2d 279, 281–82 (1974) (concurring opinion) (emphasis added).

*See, e. g., Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976). In a sale of business transaction, a covenant not to compete is especially useful to "protect the asset known as 'good will' which the purchaser has bought." *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 631, 136 A.2d 838, 846 (1957). In the instant transaction, however, the reference to "good will" in the sales agreement was expressly deleted at the request of appellant. While the covenant may protect assets other than good will, we find no support for appellant's claim that the addendum was merely an ancillary agreement, part and parcel with and supported by the original sales contract of August 25, 1976. The agreement of August 25, 1976, was a full, complete, and binding contract and was not dependent upon the negotiation of a covenant not to compete to complete its purposes. We therefore find adequate support for appellee's claim that

the covenant was an independent agreement that must be supported by independent consideration. *See Cleaver v. Lenhart*, 182 Pa. 285, 37 A. 811 (1897).

Appellant argues, however, that the covenant was supported by adequate consideration, to-wit, his decision to purchase the property at 1000 DeKalb Street from appellee's son. In essence, appellant claims that because the sales agreement was contingent upon his purchasing the building, he gave adequate consideration for the covenant at the closing on September 21, 1976, by agreeing to buy the building and not aborting the transaction by refusing to purchase the property. We find this argument to be wholly without merit.

The testimony of both parties established that appellant was concerned that he would be unable to procure the $30,000 needed to purchase the building. There was no question that the owner of the property, appellee's son, would refuse to sell the property, and appellee testified that the property was held in his son's name merely for tax purposes. Finally, appellee assisted appellant in securing financing by listing the sales price of the property at $40,-000, so that appellant could procure $29,000 from the lending institution. Thus, appellee was forced to declare as income and pay tax on $10,000 that he did not actually receive, all in an effort to aid appellant in securing adequate financing.

In light of the above summary, we must conclude that appellant's supposed consideration at the closing was fictitious, and would render the initial sales agreement a mere nullity. Agreements of sale subject to a condition precedent of obtaining adequate financing are valid and binding. Such an agreement, however, imposes a requirement of diligent and good faith effort on the part of the purchaser to secure the proper financing. *Cf. DiBenedetto v. DiRocco*, 372 Pa. 302, 93 A.2d 474 (1953); *Tieri v. Orbell*, 192 Pa.Super. 612, 162 A.2d 248 (1960); *King v. Clark*, 183 Pa.Super. 190, 130 A.2d 245 (1957). Appellant's ability to cancel the transaction could be exercised only if, after good faith effort, he was unable to obtain the financing. Indeed,

accepting appellant's claim that he had an absolute right to refuse to purchase the property, which right he relinquished on September 21, 1976, in return for the covenant not to compete, would render the August 25, 1976 sales agreement void for lack of mutuality of promises. Accordingly, we will not ascribe such an interpretation to the condition precedent.

 Finally, although not raised by appellant, we note that the covenant not to compete was executed under seal. While a seal to an agreement imports consideration, *see, e. g., In re Brereton's Estate*, 388 Pa. 206, 130 A.2d 453 (1957); *Barnhart v. Barnhart*, 376 Pa. 44, 101 A.2d 904 (1954), the rule is inapplicable in a court of equity where the proceeding is an appeal to the equitable conscience of the court. In such a proceeding, the common law rule that past consideration is inadequate for a present contract is controlling.[1] *See, e. g., George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975); *Community Sports, Inc. v. Denver Ringsby Rockets, Inc.*, 429 Pa. 565, 240 A.2d 832 (1968).

Accordingly, the order of the lower court denying appellant's request for a preliminary injunction is affirmed.

SPAETH, J., files a concurring opinion.

CERCONE, President Judge, and HESTER, J., file dissenting statements.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

On August 23, 1976, appellant entered into an unconditional agreement to purchase the property at 1000 DeKalb Street. *See* Record at 132a–133a and 160a–163a. On August 25 appellant agreed to purchase appellee's practice, subject to one condition only, that if the purchase of the

---

1. In this respect, we note that appellant also prayed for relief in the form of monetary damages as compensation for any loss of patients occasioned by appellee's resumption of his medical practice. Whether the covenant under seal would permit enforcement of this "legal" remedy in a proceeding in equity, we do not determine at this time.

property did not occur, appellant was not obliged to purchase the practice.[1] The purchase of the property could not occur only if appellant breached his legal obligation to purchase the property, or if Craig Sablosky, appellee's son, breached his legal obligation to sell the property, or if both mutually agreed to rescind the agreement.[2] Therefore, appellant gave up nothing when, on September 21, he obtained appellee's covenant not to compete. As the majority notes, to be specifically enforceable a covenant not to compete must be supported by adequate consideration. Since appellant's covenant was not so supported, it is not specifically enforceable.[3]

CERCONE, President Judge, dissenting:

The majority opinion states that:

"Appellant was represented at closing by counsel, who objected that the agreement of sale did not contain a covenant not to compete. Appellee reaffirmed his intention to retire to Florida, and stated he would sign *any*

1. Paragraph 4 of the agreement to purchase the practice stated:
 This sale is contingent upon the purchase of BUYER of premises 1000 DeKalb Street, Norristown, Pennsylvania and the closing of this transaction shall not take place unless and until said sale is consummated. Immediately after the sale of said premises is consummated, the closing hereunder shall be held and the assets of the SELLER, including all of SELLER's records of its patients, shall then be delivered to BUYER.

2. There is no indication of record that either a breach or a mutual rescission occurred.

3. It may be noted that appellant's duty to purchase the property did not technically run to appellee personally, but rather to appellee's son, who was title-owner of the property. However, in the circumstances of this case, appellant's performance of his duty to the third party, *i. e.* appellee's son, could not serve as adequate consideration for appellee's promise not to compete. *See generally* 1A Corbin, Contracts § 176 (1963). This is so because, as the record shows, appellee's son acted only as a strawman for appellee. Record at 88a. (And consider the facts mentioned in the majority opinion, *e. g.,* appellee's assistance in obtaining the mortgage money for appellant.) In substance, therefore, although not in form, appellant's duty to purchase the property did run to appellee; appellant's breach of that duty would have amounted to a breach of his agreement to purchase appellee's practice.

*covenant that appellant desired.* Closing on the property was completed, and the parties returned to the office of appellee's attorney." (Emphasis added.) (p. 450.)

An addendum was then signed that included the covenant not to compete.

This language clearly shows that the consideration for the covenant not to compete occurred simultaneously with the closing of the Florida property. The evidence demonstrates, as reflected in the language of the majority and concurring opinions, that the sale of the property *was* dependent on the covenant not to compete and thus the covenant was supported by the consideration of the sale. For this reason, I dissent.

HESTER, Judge, dissenting:

I dissent. I would restrict the appellee in accordance with the clear and unambiguous terms of his agreement dated September 21, 1976.